UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
RONALD GRIER,                        :
                                     :    10 Civ. 5514 (JSR) (JCF)
              Plaintiff,             :
                                     :         REPORT AND
     -against-                       :         RECOMMENDATION
                                     :
MR. ANTHONY CHU, F.S.A.II; MR.       :
DAVID WILLIAMS, Head Cook; MR.       :
WALTER BRADY, Assistant Cook;        :
SING SING CORRECTIONAL FACILITY,     :
                                     :
              Defendants.            :
- - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE JED S. RAKOFF, U.S.D.J.:

     Ronald Grier brings this action pro se pursuant to 42 U.S.C.
§ 1983 and state law against Anthony Chu, David Williams, and
Walter Brady, all staff members at Sing Sing Correctional Facility
("Sing Sing") alleging violations of his constitutional rights in
connection with an injury he sustained in the prison food service
area.   The plaintiff has asserted claims under the Eighth and
Fourteenth Amendments to the United States Constitution and New
York law.   Specifically, Mr. Grier alleges that (1) the defendants
knew that the cooking kettles in Sing Sing's kitchen were in an
inherently dangerous state of disrepair yet failed to abate this
hazard, (2) the defendants failed to train him properly in the safe
operation of the kettles, (3) defendant Williams ordered him to
retrieve vegetables from a kettle, even though he had informed Mr.
Williams that he did not know how to open the kettle without

1

burning himself, and (4) defendant Brady failed to properly supervise the inmates working in the kitchen.

The plaintiff sues the defendants in their official and individual capacities. He seeks a declaratory judgment that the defendants violated the United States Constitution and state law, injunctive relief to improve the food service training program and kitchen conditions at Sing Sing, and a total of $1,560,000 in damages -- $490,000 in compensatory damages and $30,000 in punitive damages from each defendant. The defendants have moved to dismiss Mr. Grier's claims on several grounds. For the reasons that follow, I recommend that the motion to dismiss be converted into a motion for summary judgment, and that summary judgment for the defendants be granted in part and denied in part. In addition, I recommend that all claims for injunctive relief be dismissed as moot.

Background

A. Facts

Mr. Grier has been an inmate in the custody of the New York State Department of Correctional Services since 2001 and is currently incarcerated at Sing Sing. On March 17, 2008, he began a food service training program, which he completed on July 28, 2008. (Letter of Anthony Chu dated Sept. 4, 2009 ("Chu Letter"), attached as part of Exh. B to Declaration of Susan H. Odessky dated

2

Jan. 13, 2010 ("Odessky Decl.")).  The plaintiff thereafter worked in the Sing Sing food service area on a regular basis.  (Chu Letter).  His claims arise out of an injury sustained while opening a kettle on the afternoon of May 2, 2009.  (First Amended Complaint ("1st Am. Compl."), ¶ 4).  The condition of the kettle at the time of the incident is central to Mr. Grier's claims.[1]  The cooking kettles at Sing Sing were "antiquated and dilapidated." (1st Am. Compl., ¶ 6).  Although they once had metal lids, screw housings attaching the lids had rusted and could no longer hold the lids in place while the kettles were in use.  (1st Am. Compl., ¶¶ 6, 23; Reply Affirmation in Support of Motion ("Pl. Memo."),[2] ¶ 3(i).  The lids had been placed behind the kettles on the floor, and plastic garbage bags served as makeshift lids.  (1st Am. Compl., ¶¶ 6, 21).

On May 2, 2009, the plaintiff was assigned to the evening meal shift, with responsibility for preparing, setting up, and serving food to inmates who received "diet meals."  (1st Am. Compl., ¶ 4).

--------

[1]  In filings by Mr. Grier and the defendants, reference is made to "kettles," "ovens," and "steamers."  (E.g., Pl. Memo., ¶ 18).  However, all parties appear to agree that the injury to the plaintiff was caused by steam rising from a kettle, not by an oven or steamer. (1st Am. Compl., ¶¶ 4-10; Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint ("Def. Memo.") at 2).

[2]  The plaintiff incorrectly styled his memorandum of law in opposition to the motion to dismiss as a "Reply Affirmation in Support of Motion."

Around 2:30 p.m., Mr. Williams, the head cook,  instructed the plaintiff to retrieve vegetables from a cooking kettle.  (1st Am. Compl., ¶ 5).  The plaintiff asked Mr. Williams to have the "kettle cooks" remove the vegetables from the kettle because "he did not know how to lift the plastic covering without burning himself." (1st Am. Compl., ¶ 5).  Defendant Williams then issued a direct order to the plaintiff to retrieve the vegetables, causing the plaintiff to fear that he would receive an institutional misbehavior report if he disobeyed.[3]  (1st Am. Compl., ¶¶ 8, 12).

Mr. Grier walked to the kettle area and lifted one side of the plastic garbage bag covering the vegetables.  (1st Am. Compl., ¶ 9).  He "found himself engulfed in a cloud of intensely heated steam" and raised his left arm to protect his face.  (1st Am. Compl., ¶ 9).  As a result, he suffered a severe third-degree burn to the middle of his left forearm.  (1st Am. Compl., ¶ 10).  The burn left a permanent scar that still causes "stinging" on occasion; the plaintiff conceals the injury by wearing long-sleeve shirts.  (1st Am. Compl., ¶¶ 10, 13).

In addition, the plaintiff claims that he suffered, and continues to suffer, psychological harm as a result of the injury.

---

[3]  See N.Y. Comp. Codes R. & Regs. tit. 7, § 270.2 & Rule 106.10 (establishing "[s]tandards of inmate behavior" pursuant to which "AN INMATE SHALL OBEY ALL ORDERS OF DEPARTMENT PERSONNEL PROMPTLY AND WITHOUT ARGUMENT" or face "disciplinary action").

(1st Am. Compl., ¶¶ 14-16).   In particular, he asserts that occasional dreams of the incident disrupt his sleep.  (1st Am. Compl., ¶ 16).  Mr. Grier also alleges that his diet has suffered due to the "psychological trauma" of the injury, as he now refrains from using a "hot-pot" to supplement his regular meals with food bought from the prison commissary.  (1st Am. Compl., ¶ 15).

The plaintiff makes several additional claims regarding defendants Chu and Brady.  He avers that Mr. Chu was responsible for the overall supervision and management of the food service area.[4]  (1st Am. Compl., ¶ i).  According to the plaintiff, Mr. Chu walked through the kitchen every day and saw the plastic garbage bags on the kettles, as well as the metal lids behind the kettles on the floor.  (1st Am. Compl., ¶ 21).  The plaintiff also claims that Mr. Chu failed to provide hands-on training to inmates concerning safe use of the damaged kettles.  (1st Am. Compl., ¶ 18).  Liberally construed, his claims also assert that although Mr. Chu knew of the dangers posed by the makeshift kettle lids, he failed to take appropriate action.  (1st Am. Compl., ¶¶ 21-24).

The plaintiff further alleges that Walter Brady, an assistant

---

[4]  A discrepancy exists in the record as to the position held by Mr. Chu.  The plaintiff describes Mr. Chu as a "Food Service Administrator II."  (1st Am. Compl., ¶ i).  The defendants refer to him as a "Food Services Assistant."  (Def. Memo. at 1).  This distinction does not affect the outcome of the following analysis.

cook, "abandoned his station" on the day of the incident and thus failed to supervise the inmates who were working with the kettles. (1st Am. Compl., ¶ 11).   Mr. Grier claims that Mr. Brady was "deliberately indifferent" to his well being because he failed to observe the unsafe condition of the kettles.   (1st Am. Compl., ¶¶ iii, 26-28).   The plaintiff also alleges that, prior to his injury, another inmate sustained severe burns while cleaning a kettle, due in part to its "dilapidated" condition.   (Pl. Memo., ¶ 11).[5]

<u>Discussion</u>

The defendants move to dismiss on the grounds that this Court lacks subject matter jurisdiction and that the pleadings fail to state a claim upon which relief can be granted.   In particular, the defendants argue that (1) the plaintiff fails to allege personal involvement by defendants Chu or Brady in any constitutional violation, (2) the plaintiff fails to state a constitutional claim as to any of the defendants, (3) the Eleventh Amendment bars any claim for money damages against the defendants to the extent that

---

[5] These factual allegations appear only in the plaintiff's memorandum of law.   Nevertheless, because Mr. Grier is proceeding <u>pro</u> <u>se</u> and because these allegations merely support his existing Eighth Amendment claim and do not constitute a new, independent claim, I will consider them.   <u>Cf.</u> <u>Gomez v. Warden of Otisville Correctional Facility</u>, No. 99 Civ. 9954, 2000 WL 1480478, at *6 n.6 (S.D.N.Y. Sept. 29, 2000) (declining to consider new claims first raised in plaintiff's memorandum in opposition to motion to dismiss).

they are sued in their official capacities, and (4) the defendants
are entitled to qualified immunity.[6]

A. <u>Legal Standard</u>

    1. <u>Proper Procedural Vehicle</u>

The defendants have moved to dismiss the complaint pursuant to
Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil
Procedure.  (Def. Memo. at 1, 3).  Included as Exhibit B to the
Declaration in Support of Defendants' Motion to Dismiss is a
"Packet pertaining to Grievance No 46541-09" containing submissions
by Mr. Grier to prison officials regarding his injury, the
administrative rulings concerning his grievance, and other related
documents.  Exhibit B introduces "matters outside the pleadings"
that, because they have not been excluded by the court, require

---

    [6] The defendants do not dispute that Mr. Grier has properly
exhausted his administrative remedies in accordance with the Prison
Litigation Reform Act, which provides that "[n]o action shall be
brought with respect to prison conditions under [42 U.S.C. § 1983],
or any other Federal law, by a prisoner confined in any jail,
prison, or other correctional facility until such administrative
remedies as are available are exhausted."  (Grievance Filings and
Responses, attached as Exh. B to Odessky Decl.); 42 U.S.C. §
1997e(a).  The present case follows from the second grievance that
Mr. Grier filed in connection with his injury.  The Central Office
Review Committee's ("CORC") denial of Mr. Grier's second grievance
(SS-46541-09) states that "the 5/2/09 incident was addressed in the
prior CORC decision SS-46187-09, dated 7/15/09."  (Central Office
Review Committee Decision, attached as part of Exh. B to Odessky
Decl.).  No other mention of this first grievance appears in the
record.

that the motion to dismiss be converted into a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d).[7]

The defendants have given notice to the plaintiff that their submission of additional written materials to the court may result in the treatment of their motion to dismiss as a motion for summary judgment.  (Notice to Pro Se Litigant dated Jan. 13, 2011).  The plaintiff has responded to the motion by countering the facts asserted by the defendants and raising additional issues of fact. (1st Am. Compl.).  I will therefore treat the defendants' motion as one for summary judgment pursuant to Rule 56.

2. <u>Summary Judgment Standard</u>

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where the movant shows that "there is no

---

[7]  Though Rule 12(d) does not expressly provide for conversion of a Rule 12(b)(1) motion to dismiss into a motion for summary judgment, courts have held that "the outcome should be the same" as under Rule 12(b)(6).  <u>Petty v. Goord</u>, No. 00 Civ. 803, 2007 WL 724648, at *3-5 (S.D.N.Y. March 5, 2007) (converting 12(b)(1) motion made on non-jurisdictional grounds to summary judgment motion under Rule 56); <u>see also</u> <u>Bryce v. Episcopal Church in the Diocese of Colorado</u>, 289 F.3d 648, 654 (10th Cir. 2002) ("The crucial element is the substance of the motion, not whether it is labeled a Rule 12(b)(1) motion rather than 12(b)(6)."); <u>Fraternal Order of Police, National Labor Council, USPS No. 2 v. United States Postal Service</u>, 988 F. Supp. 701, 704 n.2 (S.D.N.Y. 1997) (finding no prejudice from conversion of Rule 12(b)(1) motion into one under Rule 12(b)(6) because plaintiffs had fully briefed whether they had stated claim).

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute regarding a material fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord SCR Joint Venture L.P. v. Warshawsky, 559 F.3d 133, 137 (2d Cir. 2009), and a material fact is one that "'might affect the outcome of the suit under the governing law.'" Roe v. City of Waterbury, 542 F.3d 31, 35 (2d Cir. 2008) (quoting Anderson, 477 U.S. at 248), cert. denied, __ U.S. __, 130 S. Ct. 95 (2009). In assessing the record to determine whether there is a genuine issue of material fact, the court "must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party." McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006).

The moving party bears the initial burden of identifying "the absence of a genuine issue of material fact," Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), following which the opposing party must come forward with specific facts showing a genuine issue for trial. The parties can support their claims with discovery materials, stipulations, affidavits, or other evidence, see Fed. R. Civ. P. 56(c)(1)(A); however, "'only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment,'" Presbyterian Church of Sudan v. Talisman Energy, Inc.,

582 F.3d 244, 264 (2d Cir. 2009) (quoting Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997)), cert. denied, __ U.S. __, 131 S. Ct. 79, __ U.S. __, 131 S. Ct. 122 (2010).  Thus, the parties cannot rely on "'conclusory allegations or unsubstantiated speculation'" to support or defeat a motion for summary judgment.  Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005) (quoting Fujitsu Ltd. v. Federal Express Corp., 247 F.3d 423, 428 (2d Cir. 2001)).

Where a litigant is pro se, his pleadings should be read liberally and interpreted "'to raise the strongest arguments that they suggest.'"  McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)); accord Belpasso v. Port Authority of New York and New Jersey, 400 Fed. Appx. 600, 601 (2d Cir. 2010).  Nevertheless, proceeding pro se does not relieve a litigant from the usual requirements of summary judgment, and a pro se party's "'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." Lee v. Coughlin, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991)).

B.  Prisoner Rights Under Section 1983

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes

10

that it describes." <u>Baker v. McCollan</u>, 443 U.S. 137, 145 n.3
(1979).  Section 1983 provides as follows:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory
> or the District of Columbia, subjects, or causes to be
> subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the deprivation
> of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law . . . .

42 U.S.C. § 1983.  To state a claim under Section 1983, a plaintiff
must allege that "'(1) the challenged conduct was attributable at
least in part to a person who was acting under color of state law
and (2) the conduct deprived the plaintiff of a right guaranteed
under the Constitution of the United States.'" <u>Spillman v. City of
Yonkers</u>, No. 07 Civ. 2164, 2010 WL 86139, at *4 (S.D.N.Y. Jan. 8,
2010) (quoting <u>Snider v. Dylaq</u>, 188 F.3d 51, 53 (2d Cir. 1999)),
<u>report and recommendation adopted</u>, 2010 WL 2034538 (S.D.N.Y. May
20, 2010)

C.  <u>Eighth Amendment</u>

The Eighth Amendment prohibits "cruel and unusual punishment,"
which includes punishments that "'involve the unnecessary and
wanton infliction of pain.'" <u>Phelps v. Kapnolas</u>, 308 F.3d 180, 185
(2d Cir. 2002) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 103
(1976)). It also "'requires prison officials to take reasonable
measures to guarantee the safety of inmates in their custody.'"

Liggins v. Griffo, 356 Fed. Appx. 537, 539 (2d Cir. 2009) (quoting Hayes v. New York City Department of Corrections, 84 F.3d 614, 620 (2d Cir. 1996)).   Thus, to establish a violation of 42 U.S.C. § 1983 based on unconstitutionally inadequate conditions of confinement, a prison inmate must show that a prison official was deliberately indifferent to an excessive risk to inmate health or safety.   See Farmer v. Brennan, 511 U.S. 825, 837-38 (1994).

The analysis of deliberate indifference includes two prongs, one objective and one subjective.   First, in order to meet the objective prong, institutional conditions must "pose a substantial risk of serious harm."   Farmer, 511 U.S. at 834.   The conditions must also "violate contemporary standards of decency."   Phelps, 308 F.3d at 185.   Prisoners cannot be deprived of "'basic human needs,'" including "'reasonable safety,'" or be exposed to "'an unreasonable risk of serious damage to their future health.'"   Id. (quoting Helling v. McKinney, 509 U.S. 25, 32, 35 (1993)).   The subjective prong of the deliberate indifference standard considers whether the prison official had a sufficiently culpable state of mind.   Id. at 185-86.   A prison official has acted with deliberate indifference when "he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm."   Hayes, 84 F.3d at 620.   In Farmer, the Supreme Court declared that the

12

standard for deliberate indifference has not been satisfied unless "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." 511 U.S. at 837.

### 1. Application

The defendants concede that the plaintiff's alleged injury "appears to satisfy the objective prong of the Eighth Amendment [deliberate indifference] test." (Def. Memo. at 5). Moreover, they have made scarcely any showing regarding the subjective prong, aside from a largely conclusory argument that the plaintiff has failed to establish that Mr. Chu and Mr. Williams disregarded knowledge of a substantial risk of serious harm. (Reply Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint ("Def. Reply Memo.") at 5-7). Contrary to the defendants' position, the plaintiff's factual allegations are sufficient to enable a reasonable jury to find that defendants Chu and Williams knew of and disregarded a substantial risk of serious harm posed by the use of plastic garbage bags as kettle lids. In addition, a reasonable jury could find that the defendants' knowledge of that risk may be inferred from its obviousness. See Farmer, 511 U.S. at 844 ("[A] trier of fact may infer knowledge from the obvious.").

13

The defendants argue that the plaintiff signed documents "showing that he was adequately trained in food service preparation and was made aware of the necessary safety precautions" and thus "has failed to demonstrate that defendant Williams . . . knew of and disregarded an excessive risk to plaintiff's health and safety." (Def. Memo. at 6). This argument is unavailing. In fact, the record is inconclusive as to the food service and safety training that Mr. Grier actually received. The assertion by a prison investigator that "inmates . . . operating . . . kettles are to be properly trained on how to operate said equipment" lacks supporting facts and does not directly state that the plaintiff was properly trained in how to use the kettles. (Investigation Report, attached as part of Exh. B to Odessky Decl.) (emphasis added). The agreements signed by the plaintiff in relation to his training do not, as the defendants claim, "demonstrate that plaintiff was fully trained in the Food Service Program at Sing Sing" (Def. Memo. at 5) because he signed the agreements on the first day of his training, before he knew what he would be taught during the following four months of instruction. (Sing Sing Food Service Inmate Safety Program Bulletin dated March 17, 2008, Sing Sing Food Service Inmate Training Program Agreement & Orientation dated March 17, 2008, Sing Sing Food Service Inmate Training Program Agreement dated March 17, 2008 (collectively, "Training

14

Agreements"), attached as part of Exh. B to Odessky Decl.).  More saliently, these documents do not establish that the training program covered the safe use of the makeshift kettle lids. (Training Agreements).  Finally, the defendants do not make any showing in response to the plaintiff's claims that they knew the risk of serious harm from using the kettles was substantial even for inmates who had received classroom training.  (1st. Am. Compl., ¶¶ 18, 25).

Because the defendants fail to show that the plaintiff can not establish the subjective prong of the deliberate indifference test and fail to address directly the factual allegations that suggest he could establish the requisite state of mind of Mr. Chu and Mr. Williams, the plaintiff has stated a claim under the Eighth Amendment.

D.   <u>Fourteenth Amendment</u>

In addition to his Eighth Amendment claims, the plaintiff alleges that the defendants violated his substantive due process rights under the Fourteenth Amendment.  (1st Am. Compl., ¶¶ 29, 30).  "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'"  <u>Albright v. Oliver</u>, 510 U.S. 266, 273

(1994) (quoting <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989)); <u>see also</u> <u>Graham</u>, 490 U.S. at 395 n.10 ("Any protection that 'substantive due process' affords convicted prisoners . . . is, we have held, at best redundant of that provided by the Eighth Amendment.").

The constitutional claim alleged by the plaintiff is that the defendants violated the explicit prohibition against cruel and unusual punishment contained in the Eighth Amendment. All of the plaintiff's substantive due process claims under the Fourteenth Amendment should therefore be dismissed.

E.  <u>Personal Involvement</u>

The defendants contend that the plaintiff fails to allege personal involvement by defendants Chu or Brady in any constitutional violation.[8] (Def. Memo. at 1; Def. Reply Memo. at 1). "'It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" <u>Provost v. City of Newburgh</u>, 262 F.3d 146, 154 (2d Cir. 2001) (quoting <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994)); <u>accord</u> <u>Harris v. Westchester County Department of Corrections</u>, No. 06 Civ. 2011,

_____

[8]   The defendants thus implicitly concede the personal involvement of Mr. Williams in the incident that caused the plaintiff's injury. (Def. Memo. at 1; Def. Reply Memo. at 1).

16

2008 WL 953616, at *9 (S.D.N.Y. April 3, 2008).  Therefore, "to state a claim for damages under Section 1983, the plaintiff must allege sufficient facts to demonstrate that defendants were personally or directly involved in the violation, that is, that there was 'personal participation by one who ha[d] knowledge of the facts that rendered the conduct illegal.'" Harris, 2008 WL 953616, at *9 (alteration in original) (quoting Provost, 262 F.3d at 155). "A supervisory official is not liable under section 1983 by virtue of his subordinate's actions; rather, he must be shown to have 'some personal responsibility.'" Murray v. Koehler, 734 F. Supp. 605, 606 (S.D.N.Y. 1990) (quoting Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2d Cir. 1989)).

A supervisory official may be found to have personal involvement in a constitutional violation if: (1) the official directly participated in the violation; (2) the official, "after being informed of the violation through a report or appeal, failed to remedy the wrong"; (3) the official "created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom"; (4) the official "was grossly negligent in supervising subordinates" who caused the unlawful condition or event; or (5) the official "exhibited deliberate indifference [to the rights of inmates] by failing to act on information indicating that unconstitutional acts were

17

occurring." Back v. Hastings on Hudson Union Free School District, 365 F.3d 107, 127 (2d Cir. 2004) (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)); accord Arar v. Ashcroft, 585 F.3d 559, 616 (2d Cir. 2009), cert. denied, ___ U.S. ___, 130 S. Ct. 3409 (2010); Wright, 21 F.3d at 501; see also Plair v. City of New York, ___ F. Supp. 2d ___, ___, No. 10 Civ. 8177, 2011 WL 2150658, at *4-5 (S.D.N.Y. May 31, 2011) (holding that "the traditional [Second Circuit] categories of supervisory liability still apply" in deliberate indifference cases after Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937 (2009)); Jackson v. Goord, 664 F. Supp. 2d 307, 324 & n.7 (S.D.N.Y. 2009) (same).

   1.   Defendant Brady

The plaintiff has failed to make a sufficient showing of personal involvement by Mr. Brady.  Mr. Brady did not directly participate in ordering the plaintiff to retrieve vegetables from the kettle; indeed, Mr. Grier asserts that Mr. Brady was not present in the food service area at the time of his injury.  (1st Am. Compl., ¶ iii).  Nor do the plaintiff's allegations suffice to show that Mr. Brady was personally involved in the incident as a supervisory official.   Mr. Brady did not learn of any constitutional violation through a report or appeal and then fail to remedy the wrong.  The plaintiff does not allege that Mr. Brady, an assistant cook, had the authority to determine policies or

18

customs in the kitchen.  And though the plaintiff alleges that Mr. Brady exhibited deliberate indifference to his rights by failing to act on information that indicated unconstitutional practices, this claim is conclusory and unsupported by any specific factual allegations.  (1st Am. Compl., ¶¶ 26-28); Jeffreys, 426 F.3d at 554.

Liberally construed, the First Amended Complaint does claim that Mr. Brady was grossly negligent in supervising subordinates.  However, this claim fails as a matter of tort law.  According to the plaintiff, the Mr. Brady's gross negligence arises from his absence from the kitchen at the time of the injury.  (1st Am. Compl., ¶ iii).  If Mr. Brady had been there, the plaintiff insists, he would have instructed "kettle cooks" to retrieve the vegetables or assist the plaintiff, and thus the plaintiff would not have been burned.  (1st Am. Compl., ¶¶ 11, 25(i)).  Ultimately, though, Mr. Williams's direct order to the plaintiff to retrieve the vegetables severs any speculative causal link between Mr. Brady's absence and the injury sustained by the plaintiff.  Thus, even if Mr. Brady breached some duty of care owed to the plaintiff by being absent, his absence was not a proximate cause of the plaintiff's injury.  Without causation, Mr. Brady cannot be liable.

2.   Defendant Chu

On the other hand, resolving all ambiguities and drawing all

19

reasonable inferences in favor of the plaintiff, Mr. Grier makes a sufficient showing to establish the personal involvement of defendant Chu in the alleged constitutional violation that resulted in his injury.  In particular, the plaintiff alleges that Mr. Chu allowed the continuance of a policy or custom that violated his constitutional rights.  (1st Am. Compl., ¶¶ i, 6, 21).  The plaintiff also alleges that Mr. Chu exhibited deliberate indifference to his rights by failing to act on information indicating that unconstitutional practices were occurring.  (1st Am. Compl., ¶ 21).

The defendants could have disputed these alleged grounds for supervisory liability in their Reply Memorandum.  They did not. Instead they conclusorily argued that the claim that Mr. Chu "should have been aware" of the kettles' condition fails to "establish that defendant Chu knew that plaintiff would suffer serious harm by retrieving vegetables from a steam kettle on a particular day" and therefore that "defendant Chu had no personal involvement in any constitutional violation." (Def. Reply Memo. at 6).  But foreknowledge of serious harm on a specific date is not required to establish personal involvement of a supervisory official in a § 1983 violation.  See Back, 365 F.3d at 127.

The plaintiff's uncontradicted assertions concerning Mr. Chu's authority and activities in the kitchen would thus allow a

finding of personal involvement by Mr. Chu as a supervisory official.  Given the defendants' concession that the plaintiff's injury satisfies the objective prong of the deliberate indifference test, the question of whether Mr. Chu was personally involved in alleged constitutional violations (as opposed to merely negligent acts or omissions) depends on further development of certain factual issues: whether he had the authority and performed the daily kitchen inspections that the plaintiff alleges; whether he was aware of facts from which the inference could be drawn that the kettles posed a substantial risk of serious harm to inmates and drew that inference; and whether the risk was so obvious that his knowledge may be inferred.  See Farmer, 511 U.S. at 837, 842-43 (1994).

    F.  Qualified Immunity

    The defendants argue, in the alternative, that notwithstanding Mr. Williams's or Mr. Chu's personal involvement in any alleged constitutional violations, they are nevertheless entitled to qualified immunity.  (Def. Memo. at 7-8).  "Qualified immunity shields government officials from liability for civil damages as a result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, but insubstantial, lawsuits."  Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995) (citing Harlow v. Fitzgerald, 457 U.S. 800, 817-18

(1982)).   However,  officials  are  protected  from  liability  only "insofar  as  their  conduct  does  not  violate  clearly  established . . . constitutional  rights  of  which  a  reasonable  person  would  have known."  Harlow, 457 U.S. at 818.

As  a  threshold  matter,  courts  typically  determine  whether  the facts,  when  viewed  in  the  light  most  favorable  to  the  party professing  an  injury,  "show  the  officer's  conduct  violated  a constitutional  right."  Saucier v. Katz, 533 U.S. 194, 201 (2001). If  so,  the  court  then  examines  whether  "the  right  was  clearly established."  Id.  However, the Supreme Court has since clarified that  "judges  of  the  district  courts . . . should  be  permitted  to exercise  their  sound  discretion  in  deciding  which  of  the  two  prongs of  the  qualified  immunity  analysis  should  be  addressed  first  in light  of  the  circumstances  in  the  particular  case  at  hand." Pearson v. Callahan, 555 U.S. 223, __, 129 S. Ct. 808, 818 (2009).

Under  the  "clearly  established"  test,  "[t]he  contours  of  the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton,  483  U.S.  635,  640  (1987).   Even  where  a  plaintiff's federal  rights  are  well-defined  and  the  boundaries  of  official conduct  clearly  established,  qualified  immunity  will  protect  a government  actor  so  long  as  it  was  "'objectively  reasonable'  for him  to  believe  that  his  actions  were  lawful  at  the  time  of  the

challenged act." <u>Lennon</u>, 66 F.3d at 420.  Accordingly "a qualified immunity defense is established if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." <u>Kent v. Katz</u>, 312 F.3d 568, 573 (2d Cir. 2002).

"The objective reasonableness test is met -- and the defendant is entitled to qualified immunity -- if officers of reasonable competence could disagree on the legality of defendant's actions." <u>Malsh v. Austin</u>, 901 F. Supp. 757, 764 (S.D.N.Y. 1995) (internal quotation marks omitted); <u>accord</u> <u>Joyner v. Greiner</u>, 195 F. Supp. 2d 500, 508 (S.D.N.Y. 2002).  Officials are not entitled to qualified immunity when a plaintiff cites "cases of controlling authority in their jurisdiction at the time of the incident" or "a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." <u>Wilson v. Layne</u>, 526 U.S. 603, 617 (1999).  In the present case, the plaintiff is proceeding <u>pro</u> <u>se</u>, and therefore his pleadings will be read "to raise the strongest arguments that they suggest." <u>McPherson</u>, 174 F.3d at 280.  The defendants bear the burden of pleading and proving the affirmative defense of qualified immunity. <u>Black v. Coughlin</u>, 76 F.3d 72, 75 (2d Cir. 1996).  A "bald assertion" of qualified immunity "provides no basis for a ruling in [the defendants'] favor." <u>Shechter v. Comptroller of City of New York</u>,

23

79 F.3d 265, 270 (2d Cir. 1996); Wireless Ink Corp. v. Facebook, Inc., No. 10 Civ. 1841, 2011 WL 2089917, at *14 n.5 (S.D.N.Y. May 26, 2011).

### 1. Defendant Williams

The defendants argue that Mr. Williams is entitled to qualified immunity because no reasonable individual in his position would have thought that ordering the plaintiff to retrieve vegetables from a steaming kettle violated any clearly established constitutional right. (Def. Memo. at 8).

It is clearly established in the Second Circuit that a prison official directly supervising an inmate in his work assignment violates the Eighth Amendment when (1) the inmate is asked to use unsafe equipment, (2) the inmate informs his supervisor that the equipment is unsafe, and (3) the supervisor nonetheless orders the inmate to work with the unsafe equipment. See Gill v. Mooney, 824 F.2d 192, 195 (2d Cir. 1987); Allah v. Goord, 405 F. Supp. 2d 265, 275-77 (S.D.N.Y. 2005); Baumann v. Walsh, 36 F. Supp. 2d 508, 514-15 (N.D.N.Y. 1999); Scott v. Abate, No. 93 CV 4589, 1995 WL 591306, at *6 (E.D.N.Y. Sept. 27, 1995) (finding "allegations clearly support[ed] the inference that [prison officials] acted with deliberate indifference" where plaintiff slipped and fell after having informed officer and supervisory official of hazards of current cleaning method); see also Banks v. Stewart, No. 08 Civ.

7463, 2010 WL 2697075 at *11-12 (S.D.N.Y. July 6, 2010); <u>Gomez v.</u>
<u>Warden of Otisville Correctional Facility</u>, No. 99 Civ. 9954, 2000
WL 1480478, at *6 (S.D.N.Y. Sept. 29, 2000); <u>accord</u> <u>Morgan v.</u>
<u>Morgensen</u>, 465 F.3d 1041, 1047 (9th Cir. 2006) (citing <u>Gill</u> in
holding that when inmate alerted supervisor to dangerous defect in
equipment, ordering inmate to continue working with defective
equipment constituted violation of inmate's Eighth Amendment
rights); <u>Alexander v. Barefield</u>, No. 5:06cv22, 2007 WL 1655383, at
*6 (N.D. Fla. June 7, 2007) (holding that deliberate indifference
exists where "a prison official knowingly compels a prisoner to
perform work that involves an imminent threat of serious physical
harm posing a danger to the prisoner's life or health" and citing
<u>Gill</u>).

     In <u>Gill</u>, an inmate proceeding <u>pro</u> <u>se</u> alleged that he was
injured in a fall from an unsafe ladder that prison officials
forced him to use in a work assignment.  824 F.2d at 195.  The
inmate claimed that he informed his direct supervisor that the
ladder was unsafe, but the supervisor ordered him to continue
working.  <u>Id.</u>  The Second Circuit held that these allegations
"'involve[d] more than ordinary lack of due care for the prisoner's
interests or safety,'" and thus stated a colorable Eighth Amendment
claim.  <u>Id.</u> (quoting <u>Whitley</u>, 475 U.S. at 319).

     The defendants in the present case, who do not cite <u>Gill</u>, rely

instead on a district court opinion to support their assertion that Mr. Williams's actions did not amount to a constitutional violation. (Def. Reply Memo. at 5-6). In <u>Banks v. Stewart</u>, an inmate alleged that a prison official had ordered him to use a meat-slicing machine despite his lack of training in its operation. 2010 WL 2697075, at *11. The court found that requiring the inmate to use kitchen equipment that "serves an obvious practical purpose . . . does not, without more" show that the official was recklessly indifferent to the inmate's safety. <u>Id.</u> at *12. However, the defendants overlook important factual distinctions between the plaintiff's claims in <u>Banks</u> and Mr. Grier's allegations in the instant matter, which the <u>Banks</u> court explicitly held would have strengthened the "constitutional dimension" of that inmate's case: (1) an allegation that the plaintiff was untrained in the use of the kitchen equipment, (2) an allegation that the plaintiff told the defendant that he did not know how to operate the equipment, (3) an allegation that the defendant knew that the plaintiff did not know how to operate the equipment, and (4) an allegation that the equipment was defective and thus "more likely to injure its operator." <u>See</u> <u>id.</u> (citing <u>Gill</u>, 824 F.2d at 195). The court in <u>Banks</u> also observed that "[c]ourts in this Circuit have allowed claims to proceed to discovery or trial based on a prison official's ordering a prisoner to perform inherently dangerous

tasks . . . ." <u>Id.</u> at *11.

Similarly, in <u>Baumann</u>, an inmate alleged that his supervisor ordered him to retrieve supplies from the top shelves of a storage room by climbing along shelves and standing on boxes, conditions that the court described as "inherently unsafe and dangerous." 36 F. Supp. 2d at 513-14. The plaintiff asserted that the supervisor knew of the unsafe condition, that he had informed the supervisor about the hazards of the work assignment, and that the supervisor nonetheless ordered him to perform the task. <u>Id.</u> at 514-15. The <u>Baumann</u> court, applying <u>Gill</u>, found that the actions of the supervisor "evidenced more than an ordinary lack of due care" for the plaintiff and "could amount to deliberate indifference," and therefore denied summary judgment for the supervisor. <u>Id.</u> at 515.

In the present case, Mr. Grier alleges that Mr. Williams knew that opening a kettle with a garbage bag lid was inherently unsafe and dangerous, that he informed Mr. Williams that he did not know how to open the kettle without burning himself, that Mr. Williams nonetheless ordered him to open the kettle, and that the kettle was damaged and therefore more likely to cause injury. (1st Am. Compl., ¶¶ 5-8). At the time of the plaintiff's injury, it was beyond debate in the Second Circuit that a prison official may violate an inmate's Eighth Amendment rights by ordering him to use unsafe equipment after the inmate informs the official that the

equipment poses a safety risk.  In addition, the defendants concede that the kettle objectively posed a substantial risk of serious harm.  (Def. Memo. at 5).  Thus, it was not objectively reasonable for Mr. Williams to believe that his order to the plaintiff was lawful if Mr. Williams was aware of facts from which the inference could be drawn that the kettle posed a substantial risk of serious harm and drew that inference, or if the excessive risk was so obvious that his knowledge may be inferred.  See <u>Farmer</u>, 511 U.S. at 837, 842-43.  Therefore,  Mr. Williams is  not entitled to qualified  immunity  at  this  time,  pending  further  factual development.

       2.  <u>Defendant Chu</u>

The defendants argued in their initial Memorandum of Law that because Mr. Grier "alleges no claims of constitutional violations against defendant[] Chu," he is "clearly entitled to qualified immunity." (Def. Memo. at 7).  That was only true, however, before Mr. Grier was granted leave to amend his complaint.  The plaintiff's First Amended Complaint, liberally construed, states at least two constitutional claims against Mr. Chu.  The defendants did not revisit the issue of qualified immunity for Mr. Chu in their Reply Memorandum, stating only that "defendants rest on their opening brief as to their arguments that all three defendants are entitled  to  qualified  immunity."   (Def. Reply Memo. at 8).

However, their opening brief only contained one sentence as to why Mr. Chu is entitled to qualified immunity.  (Def. Memo. at 7-8). Simply resting on this conclusory sentence without addressing the constitutional claims in the First Amended Complaint is insufficient to establish the qualified immunity defense for Mr. Chu.

   G.   Injunctive Relief

   The defendants challenge the plaintiff's claims for injunctive relief on the grounds that he has failed to establish any constitutional violation and that he lacks standing.  (Def. Reply Memo. at 7).   In light of certain representations made by the plaintiff, all claims for injunctive relief should be dismissed as moot.

> Plaintiffs seeking injunctive relief must establish . . . standing, namely a "real and immediate threat of repeated injury" demonstrated by more than "past exposure to illegal conduct." City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983) (quoting O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974)). In other words, plaintiffs asserting an injunction claim must allege the probability of a future encounter with the defendant which is likely to lead to a similar violation of some protected right. See Lyons, 461 U.S. at 105-06.

Roe v. City of New York, 151 F. Supp. 2d 495, 501-02 (S.D.N.Y. 2001); see also Shain v. Ellison, 356 F.3d 211, 216 (2d Cir. 2004) ("[A] plaintiff seeking injunctive relief must demonstrate both a likelihood of future harm and the existence of an official policy

29

or its equivalent." (emphases omitted)).

Typically, Lyons' stringent immediacy requirement renders moot any claim for injunctive relief where the plaintiff is not under active threat of repeated violation; however, there is an exception for cases that are "capable of repetition, yet evading review." United States Parole Commission v. Geraghty, 445 U.S. 388, 398-99 (1980).  Such cases arise where "the plaintiff demonstrates that the injury to him will persist, even though the source of the injury has subsided for the moment."  Jobie O. v. Spitzer, No. 03 Civ. 8331, 2007 WL 4302921, at *14 (S.D.N.Y. Dec. 5, 2007).  This exception applies "only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality."  Lyons, 461 U.S. at 109.  Courts in the Second Circuit have applied this exception in a limited number of instances where the plaintiff has demonstrated both (1) prior injury as a result of the complained-of policy and (2) a high likelihood of being subjected to the policy again.  See, e.g., Mental Disability Law Clinic v. Hogan, No. 06 CV 6320, 2008 WL 4104460, at *7-8 (E.D.N.Y. Aug. 29, 2008) (finding standing for plaintiff with persistent mental illness to challenge involuntary inpatient treatment procedures of local hospital under which she had been hospitalized); Lake v. Speziale, 580 F. Supp. 1318, 1326-28 (D. Conn. 1984) (holding plaintiff who had twice been

incarcerated for contempt for failing to meet his child support obligations had standing to seek injunction requiring courts to advise defendants in civil contempt hearings of their right to counsel).

Here, the plaintiff fails to plead adequately the required elements to prove standing for injunctive relief.  He appears to seek an injunction ordering the defendants  to (1) incorporate hands-on instruction into the food service training program, in order to adequately prepare inmates to safely use kitchen equipment and (2) refrain from subjecting the plaintiff and other similarly situated inmates to "hazardous cooking conditions."  (1st Am. Compl. at 13).  However, the plaintiff notes that sometime after he was injured, Sing Sing "implemented an over-haul renovation to the entire kitchen area" and discontinued the policy or custom of covering kettles with plastic garbage bags.  (Pl. Memo., ¶ 11).

All of the plaintiff's colorable claims relate to the use of kettles.  Furthermore, though the plaintiff alleges a prior injury to another inmate due to the general "dilapidated" condition of the kettles (Pl. Memo., ¶ 11), he does not allege that the kettles in use at Sing Sing since the kitchen renovation are damaged in any way.  Nor does he make any specific claims concerning the alleged lack of hands-on training or worker safety in the renovated kitchen.

Given that the use of makeshift kettle lids is the crux of the constitutional violation alleged by the plaintiff, the discontinuance of this practice indicates that there is not a high likelihood of the plaintiff's again being subjected to the policy that caused his injury.  The plaintiff's request for injunctive relief is thus mooted, and all such claims should be dismissed.

H.  Eleventh Amendment

The defendants assert that the plaintiff's claims against them in their official capacities are barred by the Eleventh Amendment (Def. Memo. at 8-9) and that he fails to establish any constitutional violation that entitles him to a declaratory judgment (Def. Reply Memo. at 7).

The Eleventh Amendment protects states and state agencies from being sued in federal court.  E.g., Alabama v. Pugh, 438 U.S. 781, 782 (1978) (per curiam).  Likewise, to the extent that a state official is sued for damages in his official capacity, the suit is deemed to be against the state, and the official is entitled to invoke the protection of the Eleventh Amendment.  Kentucky v. Graham, 473 U.S. 159, 165-66 (1985).  Thus, state officials cannot be sued in their official capacities for monetary damages. However, state officials may nonetheless be sued in their official capacities for injunctive relief, CSX Transportation, Inc. v. New York State Office of Real Property Services, 306 F.3d 87, 89 (2d

32

Cir. 2002) (citing <u>Ex parte Young</u>, 209 U.S. 123, 154 (1908)), and also in their individual capacities for monetary damages, <u>Hafer v. Melo</u>, 502 U.S. 21, 30-31 (1991).

The Eleventh Amendment also bars federal courts from issuing declaratory judgments against state officials when "[t]here is no claimed continuing violation of federal law, and therefore no occasion to issue an injunction," nor any threat of future violations. <u>Green v. Mansour</u>, 474 U.S. 64, 73 (1985). This sort of retrospective relief

> would be useful . . . only if it might be offered in state-court proceedings as res judicata on the issue of liability, leaving to the state courts only a form of accounting proceeding whereby damages or restitution would be computed. But the issuance of a declaratory judgment in these circumstances would have much the same effect as a full-fledged award of damages or restitution by the federal court, the latter kinds of relief being of course prohibited by the Eleventh Amendment.

<u>Id.</u>

In the present case the plaintiff seeks damages and a declaratory judgment against the defendants in their official and individual capacities. (1st Am. Compl. at 12-13 & ¶¶ i-iii). He concedes that following the renovation of the Sing Sing kitchen, state officials have discontinued the allegedly unconstitutional practice of using makeshift lids on kettles. (Pl. Memo., ¶ 11). As a result, the plaintiff does not claim continuing violations of

the Constitution nor do his allegations suggest a threat of future violations.  Because the claimed violation has been abated, a declaratory judgment would be purely retrospective.  Therefore the defendants are entitled to summary judgment as to all claims for damages and declaratory judgment to the extent that they are sued in their official capacities.

Conclusion

For the reasons set forth above, I recommend that summary judgment be granted to the defendants on: (1) all claims against defendant Brady; (2) all Fourteenth Amendment claims; and (3) any claim for damages or declaratory judgment to the extent that a defendant is sued in his official capacity.  I also recommend that all claims for injunctive relief be dismissed as moot.  I recommend that summary judgment be denied with respect to the plaintiff's Eighth Amendment and supplemental state law claims against defendants Chu and Williams, including claims for damages or declaratory relief against these defendants in their individual capacities.

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the

chambers of the Honorable Jed S. Rakoff, Room 1340, 500 Pearl Street, New York, New York 10007, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          July 6, 2011

Copies mailed this date to:

Ronald Grier
01-A-2925
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York 10562

Susan H. Odessky, Esq.
Assistant Attorney General
120 Broadway
New York, New York 10271