```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
RONALD GRIER,                           : 10 Civ. 5514 (ALC) (JCF)
                                        :
            Plaintiff,                  :      REPORT AND
                                        :      RECOMMENDATION
   - against -                          :
                                        :
MR. ANTHONY CHU, F.S.A.II; MR.          :
DAVID WILLIAMS, Head Cook,              :
                                        :
            Defendants.                 :
- - - - - - - - - - - - - - - - - - - -:
```

TO THE HONORABLE ANDREW L. CARTER, JR., U.S.D.J.:

This action involves an injury the plaintiff sustained while incarcerated at Sing Sing Correctional Facility ("Sing Sing"), a New York State prison. Ronald Grier bring this case pro se pursuant to 42 U.S.C. § 1983, claiming that he was burned due to unsafe working conditions in the kitchen (alternatively referred to as the "mess hall") at Sing Sing. Mr. Grier has asserted claims against Anthony Chu and David Williams, two of his supervisors in the mess hall. The defendants and the plaintiff have each moved for summary judgment. For the reasons outlined below, both motions should be denied.

Background

  A.  Facts

Ronald Grier has been an inmate in the custody of the New York State Department of Correctional Services since 2001 and is currently incarcerated at Sing Sing. (Plaintiff's First Amended Complaint ("1st Am. Compl.") at 1). He was transferred from

1

Sullivan Correctional Facility to Sing Sing in June 2007 and, with the exception of a one-month period in 2009, has worked in the mess hall at Sing Sing since that time. (Examination Before Trial of Ronald Grier ("Grier Dep."), attached as Exh. C to Declaration of Mary Kim dated Feb. 7, 2012 ("Kim Decl."), at 6, 16-17).

Mr. Grier received forty-eight hours of training over sixteen weeks for his duties in the mess hall. (Grier Dep. at 19-20). The training consisted of reading from a manual, answering questions, and taking quizzes; the plaintiff received no practical training for his kitchen duties. (Grier Dep. at 20-21). Mr. Grier was also not trained to use the mess hall kettles, since he was primarily responsible for the ovens. (Grier Dep. at 23-25). However, the plaintiff agreed as part of his employment in the kitchen to perform any and all tasks required of him. (Plaintiff's Grievance Records, attached of Exh. B to Declaration of Susan H. Odessky dated Jan. 13, 2010 ("Odessky Decl.") at 7).

The plaintiff sustained his injury while attempting to use a kettle in the Sing Sing kitchen. According to the plaintiff, the kettles were "antiquated and dilapidated." (1st Am. Compl. at 4). The kettle lids, according to the plaintiff, were broken and detached from the kettles, which were instead covered with plastic garbage bags during cooking. (Grier Dep. at 29-30).

The parties disagree as to whether Mr. Grier ever complained to the defendants about the broken lids. (Grier Dep. at 45-46

2

(plaintiff complained to defendants "plenty of times"); Declaration of Anthony Chu dated Feb. 2, 2012 ("Chu Decl."), ¶ 6 (no complaints of unsafe kettles); Declaration of David Williams dated Feb. 2, 2012 ("Williams Decl."), ¶ 6 (same)).[1]  However, according to the plaintiff, many of the lids had been broken for some time.  (Grier Dep. at 31).

On May 2, 2009, in preparation for the evening meal shift, Mr. Williams instructed the plaintiff to remove some vegetables from the mess hall kettles.  (1st Am. Compl. at 4).[2]  The plaintiff asked Mr. Williams to have the "kettle cooks" retrieve the vegetables from the kettle because he "did not know how to lift the plastic covering without burning himself."  (1st Am. Compl. at 4). Mr. Williams then issued a "direct order" to Mr. Grier, who feared

---

[1] The Chu and Williams Declarations are attached as undesignated exhibits to the Kim Declaration.

[2] Where I refer only to the complaint, the plaintiff has not provided admissible evidence to support the facts alleged. However, consistent with the leeway granted to unrepresented litigants, courts sometimes permit a pro se plaintiff to rely on his complaint in opposing summary judgment. See Nelson v. Rodas, No. 01 Civ. 7887, 2002 WL 31075804, at *10 (S.D.N.Y. Sept. 17, 2002).  To be sure, in Nelson the complaint was verified. Nevertheless, little purpose would be served here by requiring Mr. Grier to restate the facts from his complaint in the form of an affidavit.

3

he would receive "an institutional misbehavior report" if he disobeyed.³ (1st Am. Compl. at 4-6).

The plaintiff went to the kettle area, but the "kettle guys" were "busy" and could not assist him. (Grier Dep. at 32). The plaintiff lifted the plastic bag covering the kettle, and steam "rushed out." (Grier Dep. at 32-33). Mr. Grier reflexively lifted his arm up to protect his face, and he received a severe burn to his forearm, which left a permanent scar that still causes "stinging" on occasion. (1st Am. Compl. at 5; Grier Dep. at 50-52). The plaintiff now wears long-sleeved shirts to conceal the injury. (Grier Dep. at 56).

The plaintiff also claims that the injury caused him psychological harm, from which he still suffers. (1st Am. Compl. at 6; Grier Dep. at 56-57). He asserts that the "trauma" of the accident causes occasional nightmares that disrupt his sleep. (1st Am. Compl. at 7). The "psychological" harm has also allegedly restricted Mr. Grier's diet, since he is unwilling to use a "hot-pot" to prepare food bought from the Sing Sing commissary. (1st Am. Compl. at 6-7; Grier Dep. at 23-24).

---

³ See N.Y. Comp. Codes R. & Regs. Tit. 7, § 270.2 & Rule 106.10 (establishing "[s]tandards of inmate behavior" pursuant to which "AN INMATE SHALL OBEY ALL ORDERS OF DEPARTMENT PERSONNEL PROMPTLY AND WITHOUT ARGUMENT" or face "disciplinary action" (emphasis in original)).

4

The defendants argue that they did not believe that the kettles presented an undue safety risk to Mr. Grier. (Chu Decl., ¶ 6; Williams Decl., ¶ 6). They contend that inmates are trained to wear oven mitts when using the kettles and that the oven mitts were available to the plaintiff. (Defendants' Reply Memorandum of Law in Support of Motion for Summary Judgment ("Def. Reply Memo.") at 3; Grier Dep. at 23-24).

The plaintiff argues that defendant Williams exposed him to a substantial risk of harm by ordering him to use the kettles without proper training or safety gear. Specifically, he claims that he was trained to wear rubber gloves when using the kettles, but neither they, nor any oven mitts, were available in the area of the kitchen where the kettles were located. (Affidavit of Ronald Grier dated April 11, 2012 ("Grier Aff.") at 5-6; Grier Dep. at 41).[4] The plaintiff also argues that defendant Chu allowed him to be exposed to a substantial risk by not replacing the broken kettle lids. (Grier Aff. at 5).

B.  Procedural History

After suffering his injury, Mr. Grier filed a formal grievance against the defendants and others. (Plaintiff's Grievance Records, attached as Exh. B to Odessky Decl. at 12-13). The New York State

---

[4] The Grier Affidavit also includes the plaintiff's memorandum of law in support of his cross-motion for summary judgment.

5

Department of Corrections denied the grievance, as well as the plaintiff's subsequent appeal.  (Plaintiff's Grievance Records at 1-3).

Mr. Grier filed this suit on July 9, 2010.  The defendants moved to dismiss on the grounds that this Court lacks subject matter jurisdiction and that the pleadings fail to state a claim.  The motion was treated as one for summary judgment and was granted in part and denied in part.  (Report and Recommendation dated July 6, 2011, adopted by Order dated Aug. 15, 2011).  After the parties completed discovery, the defendants moved for summary judgment, and the plaintiff cross-moved.

Discussion

    A.   Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002) (citing former Rule 56(c)); see also Andy Warhol Foundation for the Visual Arts, Inc. v. Federal Insurance Co., 189 F.3d 208, 214 (2d Cir. 1999) (internal quotation

marks omitted).[5]  The moving party bears the initial burden of identifying "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The opposing party then must come forward with "specific facts showing that there is a genuine issue for trial."  Id. at 324 (internal quotation marks omitted).  Where the nonmovant fails to make "a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment must be granted. Id. at 322.

In assessing the record to determine whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Vann v. City of New York, 72 F.3d 1040, 1048-49 (2d Cir. 1995).  Furthermore, pleadings of a nonmoving party that is proceeding pro se should be read "'to raise the strongest arguments that they suggest.'"  Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)).  Nevertheless the court must inquire whether "there is

---

[5] Rule 56 was amended in 2010.  These cases cite a prior version of Rule 56.  However, the 2010 Amendments did not change the standard for granting summary judgment. Fed. R. Civ. P. 56 advisory committee's note to 2010 Amendment.

sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," Anderson, 477 U.S. at 249 (citation omitted), and grant summary judgment where the nonmovant's evidence is conclusory, speculative, or not significantly probative. Id. at 249-50. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Electric Industrial Co. v. Zanith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288 (1968)).

In addition, a party may object if the material supporting or disputing a fact cannot be presented in an admissible form. See Fed. R. Civ. P. 56(c)(2). Accordingly, "only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997).

B. Preclusion

In his cross-motion for summary judgment, the plaintiff argues that the Court should preclude the defendants' motion under the "law of the case" doctrine.[6] (Grier Aff. at 3). He argues that,

---

[6] The "law of the case" doctrine provides that "when a court decides upon a rule of law, that decision should generally continue to govern the same issues in subsequent stages in the same case." Russul Corp. v. Zim American Integrated Shipping Services Co., No. 06 Civ. 0037, 2009 WL 3247141, at *3 (S.D.N.Y. Oct. 5, 2009) (quoting Arizona v. California, 460 U.S. 605, 618 (1983)). The

8

because the Court converted the defendants' earlier motion to dismiss into one for summary judgment, the defendants may not now make a further summary judgment motion.[7] (Grier Aff. at 3).

However, an initial denial of summary judgment does not foreclose a later grant of summary judgment as a matter of law. See Bonnie & Co. Fashions, Inc. v. Bankers Trust Co., 955 F. Supp 203, 210 (S.D.N.Y. 1997). In fact, a "party may renew its motion for summary judgment as long as it is supported by new material." Wechsler v. Hunt Health Systems, Ltd., 198 F. Supp. 2d 508, 514 (S.D.N.Y. 2002); see also Keehan v. Keehan, No. 96 Civ. 2481, 2000 WL 502854, at *3 (S.D.N.Y. April 25, 2000).

Here, after the Court denied the defendants' motion in July 2011, the parties engaged in discovery, which included taking the

---

doctrine motivates courts "generally to refuse to reopen what has been decided." Devilla v. Schriver, 245 F.3d 192, 197 (2d Cir. 2001) (quoting Messinger v. Anderson, 225 U.S. 436, 444 (1912)). However, it is, "at best, a discretionary doctrine which does not constitute a limitation on the court's power." Id. (quoting United States v. Williams, 205 F.3d 23, 34 (2d Cir. 2000)); accord Arizona, 460 U.S. at 618 ("Law of the case directs a court's discretion, it does not limit the tribunal's power.").

[7] The plaintiff also argues that he has been prejudiced by the Court's order striking five documents filed by the defendants. (Grier Aff. at 3, 12-13). These documents were stricken on the representation of defendants that they were filed in error in this case. (Order dated Feb. 8, 2012). Mr. Grier has not explained how this prejudiced him. For example, he does not argue that he was not served with the defendants' operative summary judgment papers. Indeed, it is clear from his cross-motion that he was. This asserted "prejudice" is not a reason to strike the defendants' summary judgment motion or to grant the plaintiff's.

9

plaintiff's deposition. Because the record was significantly expanded in the months following denial of the first summary judgment motion, the defendants now have "new material" on which to base their current motion. Wechsler, 198 F. Supp. 2d at 514. The defendants are therefore not foreclosed from renewing their motion for summary judgment.

    C.    Prisoner Rights under Section 1983

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979). Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]

42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999).

D.   <u>Eighth Amendment Claim</u>

The Eighth Amendment protects prisoners against "cruel and unusual punishments." U.S. Const. amend. VIII. To establish a violation of the Eighth Amendment based on unconstitutionally inadequate conditions of confinement, an inmate must prove both the <u>subjective element</u> of "deliberate indifference" and the <u>objective element</u> of "unreasonable risk" of harm. <u>Helling v. McKinney</u>, 509 U.S. 25, 35-36 (1993).

1. <u>Objective Element</u>

In order to satisfy the objective prong, institutional conditions must pose a "substantial risk of serious harm." <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994). This risk must be "sufficiently serious" to warrant Eight Amendment protection. <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991). More specifically, "States must not deprive prisoners of their 'basic human needs -- e.g., food, clothing, shelter, medical care, and reasonable safety.'" <u>Phelps v. Kapnolas</u>, 308 F.3d 180, 185 (2d Cir. 2002) (per curiam) (italics omitted) (quoting <u>Helling</u>, 509 U.S. at 32).

At an earlier stage of this litigation, the defendants conceded that the plaintiff's injury "appears to satisfy the objective prong of the Eighth Amendment [deliberate indifference] test." (Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint at 5). Though they have changed course and now claim that the plaintiff "cannot satisfy the objective prong,"

11

(Defendant's Memorandum of Law in Support of Motion for Summary Judgment ("Def. Memo.") at 7), the defendants have not brought forth sufficient evidence to warrant summary judgment. Mr. Chu and Mr. Williams simply deny in conclusory fashion that "the use of plastic bags to cover the food in the kettles presents a risk to anyone's health or safety, beyond the general risk of burns that can happen in any kitchen . . . ." (Chu Decl., ¶ 7; Williams Decl., ¶ 7).

The record, however, provides evidence that the plaintiff could satisfy the objective element. The accident allegedly resulted in a severe burn that caused lasting pain and disfigurement on the plaintiff's arm. (Grier Dep. at 50-52). A reasonable jury could find that forcing inmates to risk such injuries "deprive[s] prisoners of their . . . reasonable safety." Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002) (internal quotation marks omitted). Therefore, if all inferences are drawn in favor of the plaintiff, a reasonable jury could find that the plaintiff has satisfied the objective prong.

The defendants further allege that they did not expose Mr. Grier to an unreasonable risk because, regardless of the harm that actually befell the plaintiff, he should have been able to use the kettles safely. Mr. Chu and Mr. Williams first claim that, because the plaintiff had worked with the kettles for more than a year prior to the accident, the risk to which he was exposed was not

substantial. (Def. Memo. at 9; Def. Reply Memo. at 3). Because there was no unreasonable risk, they argue, the plaintiff was burned due to his own negligence. (Def. Memo. at 9-10). The defendants also assert that, even if the plastic bags covering the kettles created an undue risk, the plaintiff was contributorily negligent in failing to wear the proper safety gear. Mr. Chu and Mr. Williams claim that the plaintiff was trained to use oven mitts when handling the kettles and that oven mitts were available for his use at the time. (Def. Reply Memo. at 3; Chu Decl., ¶ 5; Williams Decl., ¶ 5). The plaintiff's unjustifiable lack of safety precautions, they allege, compels the conclusion that the plaintiff negligently caused his own injuries. (Def. Memo. at 9-10). If common-sense safety precautions could have prevented the accident, then the risk to which the defendants exposed Mr. Grier was likely not "unreasonable." Helling, 509 U.S. at 35-36.

The plaintiff disputes all claims regarding his negligence, however, and the record provides him some support. Mr. Grier claims that he did not have the ability to use the broken kettles safely, arguing that he was "not really trained to handle kettles." (Grier Dep. at 23-24). Furthermore, the defendants' pleadings and the record are devoid of evidence that the plaintiff was trained to use the kettles, while the plaintiff has asserted he lacked such training. (Complaint at 5). Mr. Chu and Mr. Williams have not introduced the Sing Sing kitchen training materials or depositions

13

of other kitchen employees explaining the content of the training. Though the plaintiff's year of experience with the kettles might negate any risk, a reasonable jury could find that the plaintiff's lack of formal training was more significant. Weighing experience against lack of training is a task best left to the trier of fact.

Similarly, the plaintiff's testimony directly contradicts the defendants' assertions regarding the proper choice of safety gear and whether that gear was available at the time of the accident. The plaintiff argues that oven mitts were "primarily used" not with the kettles, but for taking pans in and out of the oven. (Grier Aff. at 6). He claims that he was trained, instead, to wear "black elbow length rubberized gloves . . . to ensure against steam or boiling water burns occurring." (Grier Aff. at 5-6.) He further alleges that those gloves were "unavailable" at the time of the accident. (Grier Aff. at 6). The plaintiff, furthermore, claims that he wanted to use oven mitts but could not because "so many guys in there [were] using them." (Grier Dep. at 41-42).

Though the plaintiff does not provide any documentary evidence to support his claim, neither do the defendants provide any proof that the required oven mitts were available. There is, therefore, no proof that the plaintiff was negligent in failing to wear proper safety gear. Because the defendants have failed to show the lack of a genuine issue of material fact regarding the plaintiff's

alleged contributory negligence, they are not entitled to summary judgment on the objective element.

### 2. Subjective Element

An inmate satisfies the subjective prong by proving that a prison official acted with "deliberate indifference" when exposing him to a substantial risk. Wilson, 501 U.S. at 303. See also Estelle v. Gamble, 429 U.S. 97, 104 (1976). An official is only deliberately indifferent if he (1) is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and (2) "draw[s] the inference." Farmer, 511 U.S. at 837. See also Salahuddin v. Goord, 467 F.3d 263, 280-281 (2d Cir. 2006); Hayes v. New York City Department of Corrections, 84 F.3d 614, 620 (2d Cir. 1996).

Courts have equated the deliberate indifference requirement under the Eighth Amendment with "subjective recklessness as used in the criminal law." Farmer, 511 U.S. at 839; see also Phelps, 308 F.3d at 186. As a general matter, the criminal law "permits a finding of recklessness only when a person disregards a risk of harm of which he is aware." Farmer, 511 U.S. at 836-37. The awareness requirement means that "failure to alleviate a significant risk that [an official] should have perceived but did not . . . cannot . . . be condemned" as a violation of the Eighth Amendment. Farmer, 511 U.S. at 838. The subjective standard, then, requires an "inquiry into a prison official's state of mind"

15

to determine whether he knew of the risk to which he exposed the plaintiff. Wilson, 501 U.S. at 299.

The defendants concede that they knew of the facts from which they could have inferred that the kettles posed a risk. Mr. Chu and Mr. Williams acknowledge that on occasion "plastic bags were used to cover the food in the kettles once cooking had been completed." (Chu Decl., ¶ 4; Williams Decl., ¶ 4). They both deny, however, that they inferred from those facts that the risk of being burned by steam is "any different, whether the kettles were covered by the kettle lids or plastic bags." (Chu Decl., ¶ 7; Williams Decl., ¶ 7). In support of their motion for summary judgment, the defendants assert that neither Mr. Chu nor Mr. Williams ever received a complaint that the kettles, lids, or plastic bags were unsafe. (Chu Decl., ¶ 6; Williams Decl., ¶ 6). The plaintiff disputes this claim, however, alleging that he complained to the defendants about the dangerousness of plastic bag coverings "plenty of times" before the accident. (Grier Dep. at 45-46).

This dueling testimony establishes a genuine dispute regarding a fact material to the disposition of this case: whether the defendants were aware of the risk of harm. If Mr. Chu and Mr. Williams were not actually aware of the risk the steam posed, then they were at most merely negligent, not reckless. See Trammell v. Keane, 338 F.3d 155, 165 (2d Cir. 2003) (finding prison officials

16

merely negligent in depriving an inmate of toilet paper because they did so "inadvertent[ly]"). If, on the other hand, the plaintiff did complain to the defendants about the dangerousness of the kettles, then a reasonable jury could find them to have had sufficient notice. See Colon v. Drew, 335 F. App'x. 86, 88-89 (2d Cir. 2009) (holding plaintiff satisfied subjective element with evidence that he had complained repeatedly to defendants about health risks); Braxton v. Nichols, No. 08 Civ. 08568, 2010 WL 1010001, at *7 (S.D.N.Y. March 18, 2010) (finding defendant had notice of alleged risk to plaintiff because plaintiff had written three letters to defendant, who had personally read at least one of them).

As a general matter, contradictory testimony on a material issue signals a genuine issue of material fact. See LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998) (finding a genuine issue of material fact where parties expressly disagreed over quantity and type of asbestos to which the prison had exposed the inmate-plaintiff). Since neither party here has submitted additional proof of whether Mr. Grier ever made the defendants aware of the risks of using the kettles, their conflicting testimony creates a genuine dispute for resolution at trial.

Furthermore, "evidence that the risk was obvious or otherwise must have been known to a defendant is sufficient to permit a jury to conclude that the defendant was actually aware of it." Brock v.

17

Wright, 315 F.3d 158, 164 (2d Cir. 2003). Though "[p]rison officials may . . . introduce proof that they were not [] aware [of the risk], such as testimony that 'they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent,'" Salahuddin, 467 F.3d at 281 (quoting Farmer, 511 U.S. at 844), "a trier of fact may [still] infer knowledge from the obvious." Farmer, 511 U.S. at 844. See also Hope v. Pelzer, 536 U.S. 730, 738 (2002) (holding that an inmate can satisfy the subjective element by showing that prison officials disregarded an obviously substantial risk).

Given the conflicting testimony regarding the conspicuousness of the risk, a reasonable jury could find that covering a kettle with a plastic bag obviously poses a substantial risk of harm. Accordingly, the defendants are not entitled to judgment as a matter of law.

Conclusion

For the reasons set forth above, I recommend that the defendants' motion for summary judgment (Docket No. 43) be denied. I also recommend that the plaintiff's cross-motion be denied.

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the

chambers of the Honorable Andrew L. Carter, Jr., Room 725, 500 Pearl Street, New York, New York 10007, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

                            Respectfully Submitted,

  &nbsn;                            JAMES C. FRANCIS IV
                              UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
            June 25, 2012

Copies mailed this date:

Ronald Grier
01-A-2925
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York 10562

Mary Kim, Esq.
Assistant Attorney General
120 Broadway
New York, New York  10271